EXHIBIT

A to Complaint

exhibitsticker.com

**Yachting Solutions LLC**
229 Commercial Street
Rockport ME 04856
(207) 236-2383 (P)
(207) 236-2711 (F)
www.yachtingsolutions.com

# PURCHASE AGREEMENT

Seller agrees to sell to Purchaser, and Purchaser agrees to purchase, the Vessel described below subject to the terms and conditions stated on all pages herein and schedules ("Schedules") as set forth below (collectively, the "Agreement"). The undersigned Purchaser agrees that he/she has read and understands the terms, conditions, and limitations of liability as set forth on the attached Schedules. This Agreement is not binding on Seller unless signed by a duly authorized representative of Seller and the Initial Deposit 1 clears Seller's bank account.

## Purchaser Information

| | | | |
|---|---|---|---|
| Purchaser(s): William H. Bush | | | Contract Date: May 19, 2021 |
| Address: 6300 Wilshire Blvd., Suite 880 | Home Phone: | Work Phone: | Mobile Phone: 9175679513 |
| City, State, Postal Code: Los Angeles CA 90048 | Email: bushyinla@gmail.com | | |

## Vessel Information

| Boat Information | | Engine Information | | Serial # / (Model if Outboard) | Trailer |
|---|---|---|---|---|---|
| Make: Coronado | Length: 26ft 8in | Engine Make: Yamaha | | Engine1 #: Model: | Make: |
| Model: 26 DC | Stock #: | Engine Model: F250XCA | | Engine2 #: Model: | Model: |
| Year: 2021 | Condition: New | # of Engines: 1 | | Engine3 #: Model: | Year: |
| Hull Identification: AAC63004B121 | | HP (single): 250 | HP (combined): 250 | Engine4 #: Model: | VIN / Serial #: |

## Notes / Comments

Out of state resident qualifying for 60% tax exemption- Affidavit will be provided
Dealer prep to include- commissioning of the engine, sea trial, warranty registration, new boat Christening, orientation with Client Service Director, lines, fenders and USCG safety equipment
The exact delivery date is subject to change based on the actual arrival date of the boat to the dealer
Payment terms- 1/3 of purchase price due upon execution of this agreement- $85,737.40
1/3 of purchase price due on 06/01/2021- $85,737.41
Fina 1/3 or purchase price due prior to delivery- $85,737.41
Notes section of this agreement to supersede any conflicting terms within

## Trade-In Information (subject to Schedule A Terms and Conditions)

| | | |
|---|---|---|
| Year: | Make: | Model: |
| Hull ID / VIN: | Engine: | |
| Other: | | |
| Trade-In Allowance: | Balance Due on Trade: | Trade Equity: |

## Sales / Delivery Information

| | | |
|---|---|---|
| Seller: Yachting Solutions LLC | Sales Agent: Robert Chace | Cooperating Agent (if any): |
| Delivery Location: Yachting Solutions, LLC | Estimated Delivery Date: Jul 01, 2021 | |

## Deposit(s)

| | | | |
|---|---|---|---|
| Deposit 1 Amount: | Deposit 2 Amount: | Deposit 3 Amount: | Deposit 4 Amount: |
| Date Received: | Date Received: | Date Received: | Date Received: |

## Financing (subject to Schedule A Terms and Conditions)

| | | |
|---|---|---|
| Subject to Financing: Yes ☐ No ☐ | Accept/Reject Date: | Finance Company: |

## Transaction Information

| | |
|---|---|
| BASE RETAIL PRICE: | $177,052.86 USD |
| MANUFACTURER OPTIONS: | $57,338.86 USD |
| DEALER OPTIONS: | $2,000.00 USD |
| TRAILER: | |
| RIG / PREP / FREIGHT: | $14,995.00 USD |
| **TOTAL RETAIL PRICE:** | $251,386.72 USD |
| DISCOUNT / PROMOTIONS: | |
| **SALES PRICE:** | $251,386.72 USD |
| PRODUCT PROTECTION: | |
| | |
| **TOTAL PURCHASE PRICE:** | $251,386.72 USD |
| LESS TRADE-IN ALLOWANCE: | |
| **NET PURCHASE PRICE:** | $251,386.72 USD |
| STATE SALES TAX (2.2 %): | $5,530.50 USD |
| OTHER TAX: | |
| TITLE / REGISTRATION FEE: | |
| DOCUMENTATION FEE: | |
| DEALER / PROCESSING FEE: | $295.00 USD |
| | |
| **SUB-TOTAL:** | $257,212.22 USD |
| INITIAL DEPOSIT(S): | |
| PLUS BALANCE DUE ON TRADE: | |
| APPROVED FINANCE AMOUNT: | |
| **BALANCE DUE AT DELIVERY:** | $257,212.22 USD |

Schedules: (A) Terms and Conditions; (B) Dealer & Manufacturer Options

| Authorized Officer of Seller | Date | Purchaser Signature | Date | Co-Purchaser Signature | Date |
|---|---|---|---|---|---|
| *William Morong* (signature) | 02:16 PM GMT-04:00 May 20, 2021 | *Billy Bush* (signature) | 09:47 AM GMT-07:00 May 20, 2021 | | |
| Bill Morong | | William H. Bush | | | |

## SCHEDULE A
## TERMS AND CONDITIONS

The sale of the Vessel to Purchaser shall be subject to the following terms and conditions:

1. Payment Terms. Purchaser shall pay for the Vessel as provided in this Agreement. All payments will be in U.S. Dollars and made by wire transfer and will not be credited to Purchaser until deposited and cleared into Seller's account. Time is declared to be of the essence of this paragraph only.

2. Title Transfer. Title to the Vessel shall pass to Purchaser only when the Balance Due at Delivery has been deposited and cleared into Seller's account or upon Seller's acknowledgment in writing of other satisfactory financial arrangements in lieu of the Balance Due.

3. Delivery; Delivery Date; Conditions to Closing. Delivery will be made at Seller's place of business, unless otherwise agreed by Seller in writing. The Estimated Delivery Date is subject to Seller's ability to obtain the Vessel from the manufacturer and the non-occurrence of force majeure events such as, for example and without limitation, war, terrorism acts, strikes, accidents, tropical storms, hurricanes, natural disasters, or other causes beyond Seller's control ("Force Majeure"). If a Force Majeure event occurs, the delivery terms (and all time periods referred to in this Agreement) will be considered extended by as many work days as necessary, or if the Force Majeure causes a total or constructive loss of the Vessel, then this Agreement will be deemed terminated, the respective rights and obligations of each party will cease to exist and be of no further force and effect and neither party shall be entitled to, and hereby waives, any claim for specific performance, damages, compensation, interest, or any other claims whatsoever. If Purchaser is a corporate, partnership, trust, or other entity, Purchaser shall at least three (3) days prior to Closing provide, in a form satisfactory to Seller: (a) proof that Purchaser is in good standing under the laws of the state or government under which Purchaser has been formed; (b) a consent action or resolution demonstrating Purchaser's duly authorized decision to purchase the Vessel; and (c) a power of attorney demonstrating the authority of the individual accepting the Vessel.

4. Sales and Use Tax. Seller, its employees, officers and agents have made no representations or warranties, and Purchaser agrees that it has not and will not rely on any, representations or warranties regarding the applicability of sales tax to this transaction. Purchaser is responsible for paying any and all applicable sales and property taxes at Closing unless Purchaser provides proof acceptable to Seller that (i) no sales tax is due and payable upon the transaction, and (ii) Purchaser has taken all steps and executed all documents in a form acceptable to Seller to ensure that Purchaser is exempt from paying such sales tax. Sales tax on the Vessel is estimated on the face hereof and is subject to change without notice. In the event any taxes, state or federal, become due on the purchase, the Purchaser hereby agrees to pay such tax to the respective governmental authority or to Seller in the event the Seller is required to pay the taxes on Purchaser's behalf.

5. Price. The Purchase Price for the Vessel if not in inventory is based upon information provided to Seller by the manufacturer of the Vessel. Seller is not obligated to sell the Vessel at the Purchase Price if the manufacturer later increases its price to Seller. Seller shall advise Purchaser of any price change after the date of this Agreement. Purchaser shall have five (5) days from notification of price change to cancel the Agreement by giving written notice to Seller. Purchaser's failure to cancel the Agreement will operate as Purchaser's acceptance of the price change and Seller will rely upon that acceptance to proceed with accepting delivery of the Vessel from the manufacturer.

6. Acceptance of Manufacturer Specifications. Purchaser understands and acknowledges that the Vessel and its components are built to manufacturer's plans and specifications, in manufacturer's sole discretion with respect to construction methodology and practice as well as systems designs, including, without limitation, specifications for hull structure, mechanical systems, electrical systems and hull design ("Manufacturer Specifications"). Purchaser accepts the Manufacturer Specifications in full. The interpretation and implementation of the Manufacturer Specifications will be in accordance with manufacturer's standards, and not pursuant to any classification society or trade association's standards or similar codes except if, and as, specifically set forth in the Manufacturer Specifications. All statements regarding performance, including, without limitation, speed, handling, or fuel consumption made by Seller, manufacturer, or any other person, or contained in advertisements, brochures or other publications ("Statements") are estimates and are not guaranteed as each vessel's overall performance will vary depending upon the operator of the vessel, added equipment, and other factors.

7. THE WARRANTY ON THIS VESSEL IS GIVEN SOLELY BY THE MANUFACTURER. PURCHASER UNDERSTANDS AND ACKNOWLEDGES THAT: (a) THE VESSEL IS WARRANTED SOLELY BY THE VESSEL MANUFACTURER AND ITS COMPONENTS ARE WARRANTED SOLELY BY THE MANUFACTURER OF PARTS AND EQUIPMENT SUPPLIED TO THE VESSEL MANUFACTURER BY OTHERS IN ACCORDANCE WITH PUBLISHED WARRANTIES PURCHASER SHALL RECEIVE AT TIME OF PURCHASE; (b) SELLER DOES NOT PROVIDE ANY WARRANTIES AS THE WARRANTIES OF THE MANUFACTURER AND SUPPLIERS ARE THE SOLE AND EXCLUSIVE WARRANTIES, EITHER EXPRESS OR IMPLIED; (c) ANY AFFIRMATION OF FACT OR PROMISE, WRITTEN OR VERBAL, MADE BY SELLER WILL NOT BE DEEMED TO CREATE AN EXPRESS WARRANTY THAT THE VESSEL WILL CONFORM TO THE AFFIRMATION OR PROMISE; (d) ANY DESCRIPTION OF VESSEL IS FOR THE SOLE PURPOSE OF IDENTIFYING IT AND WILL NOT BE DEEMED TO CREATE AN EXPRESS WARRANTY THAT THE VESSEL WILL CONFORM TO THE SAMPLE OR MODEL; (e) NO AFFIRMATION, PROMISE, DESCRIPTION, OR BROCHURE, OR MODEL WILL BE DEEMED PART OF THE BASIS OF THE BARGAIN; (f) THE SALE IS MADE ON THE EXPRESS UNDERSTANDING THAT THERE IS NO EXPRESS OR IMPLIED WARRANTY THAT THE VESSEL WILL BE MERCHANTABLE OR FIT FOR ANY PARTICULAR PURPOSE; (g) SELLER HEREBY DISCLAIMS ALL IMPLIED WARRANTIES INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY; (h) IN NO EVENT WILL SELLER BE LIABLE TO PURCHASER FOR ANY DAMAGE ARISING FROM PURCHASER'S PURCHASE AND USE OF SAID VESSEL, INCLUDING, WITHOUT LIMITATION, INCIDENTAL AND CONSEQUENTIAL DAMAGES; (i) PURCHASER'S SOLE AND EXCLUSIVE REMEDY FOR ANY CLAIM ARISING FROM A DEFECT IN THE VESSEL OR ITS COMPONENTS SHALL BE PURSUANT TO THE TERMS AND CONDITIONS OF THE APPLICABLE PUBLISHED WARRANTIES; (j) A COPY OF THE MANUFACTURER'S LIMITED WARRANTY IS ATTACHED HERETO AND THAT COPIES OF THE ENGINE, TRANSMISSION AND COMPONENT WARRANTIES HAVE BEEN MADE AVAILABLE TO PURCHASER FOR REVIEW; AND (k) IN THE EVENT THAT THE VESSEL IS A DEMONSTRATOR VESSEL, USED FOR COMMERCIAL PURPOSES, CHARTER PURPOSES, OR HAS BEEN PREVIOUSLY OWNED, PURCHASER ACKNOWLEDGES THAT IT IS PURCHASING THE VESSEL "AS IS" AND "WITH ALL FAULTS" AND THAT NO WARRANTIES, INCLUDING WITHOUT LIMIT THOSE FOR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSED OR IMPLIED. If the Vessel is to be used in charter service, Purchaser warrants that he/she/it has sought and obtained advice from competent counsel and is not relying on any representations made by Seller.

8. Indemnification. Purchaser hereby releases, indemnifies, and holds harmless Seller, its officers, directors, shareholders, salespersons, employees and agents from and against: (a) any loss, damage, liability, legal action or claim of whatever nature arising out of this Agreement and other relationships provided for in this Agreement, including, without limitation, any such loss, damage, liability, legal action or claim arising out of any misrepresentation or breach of any representation, warranty or covenant herein by Purchaser of any representation, warranty, or covenant set forth in this Agreement; and (b) any taxes that may become due as a result of the sale of the Vessel or incurred under, or imposed by any provision of federal, state, or local law or regulation, or common law. This paragraph survives beyond the Closing and delivery of the Vessel, or other termination/expiration of this Agreement.

9. Default; Liquidated Damages; Limitations. Neither party shall be liable to the other for special, exemplary, consequential, or incidental damages under any circumstances or for any reason related to this Agreement. If Seller is unable to deliver the Vessel as set forth herein, Seller shall refund al deposit monies

Initials: Purchaser: BB Co-Purchaser:____________

paid by Purchaser, which will be Purchaser's sole and exclusive remedy. If Purchaser (i) refuses to take delivery, (ii) pay any balance when due under the terms of this Agreement, or (iii) otherwise fails to perform as set forth herein, Purchaser shall be deemed to be in default under this Agreement ("Default"). As consideration for entering into this Agreement, in the event of Default, Seller shall be deemed to have the right to cancel this Agreement without further notice and retain the Deposit as liquidated and agreed damages in full settlement of all claims. Purchaser agrees to pay Seller's reasonable attorney's fees incurred in the enforcement of any of the obligations of Purchaser or in the protection or enforcement of any Seller's rights hereunder.

10. **Choice of Law; Venue**. This Agreement will be governed by and construed exclusively under the laws of the state in which the head office of the Seller is located, without regard to conflicts-of-laws principles that would require the application of any other law. Any proceeding arising out of or relating to this Agreement will be brought in the courts of the state and county where Seller's head office is located, and each of the parties irrevocably submits to the exclusive jurisdiction of each such courts

11. **Assignment**. Purchaser may not assign this Agreement without Seller's prior written consent. If consent is given by Seller, Purchaser acknowledges and agrees that it shall remain bound by this Agreement.

12. **Operating Proficiency of Purchaser**: Purchaser represents that, prior to the delivery of the Vessel, he or she shall have received sufficient instruction or training to operate Vessel. To the extent that Seller provides any information concerning the Vessel, it shall not be deemed sufficient for the operation of the Vessel. Purchaser accepts full responsibility for the operation of the Vessel. Purchaser shall indemnify, defend and hold Seller, its shareholders, officers, directors and employees harmless against all claims arising from the operation or use of the Vessel once it is owned by Purchaser. In the event any action or proceeding is brought against Seller by reason of any such claim, Purchaser, upon notice from Seller, shall defend it at Purchaser's expense by counsel satisfactory to Seller.

13. **Financing**. This paragraph only applies if so indicated in the Subject to Financing Contingency section of the information box. Purchaser will have until the Financing Accept/Reject Date (as written in the information box) to review financing options. If Purchaser determines, in its discretion, that it is not satisfied with its financing options, it must deliver written notice of rejection to Seller on or before the Financing Accept/Reject Date set forth above. If Purchaser fails to give written notice of its acceptance, ***Purchaser will be deemed to have accepted the financing*** If Purchaser accepts or is deemed to have accepted the financing, the financing contingency shall be waived, the deposits shall be deemed non-refundable, and Purchaser shall proceed to purchase the Vessel pursuant to the terms of this Agreement. If Purchaser delivers a timely rejection notice, (i) the Seller shall return all deposits to Purchaser, (ii) this Agreement will terminate, and (iii) the parties will be released from any further liability hereunder. Purchaser must provide Seller with a complete and accurate credit application and all required supporting documents.

14. **Trade Vessel**. If a portion of the Purchase Price includes an allowance for a trade-in-vessel ("Trade Vessel"), such allowance is conditioned upon (A) the Trade Vessel being in good condition, ordinary wear and tear excepted, and free and clear of any survey deficiencies, liens, duties, taxes and other encumbrances; and (B) the nonoccurrence of any damage or events that may materially affect the value of the Trade Vessel (i.e. grounding of the Trade Vessel). Seller will survey the Trade Vessel at its expense (at the risk of Purchaser) and Purchaser shall correct all survey deficiencies in a timely manner, which will be a condition precedent to Seller's obligation to provide Purchaser with the Trade Allowance (above). If all survey deficiencies are not properly corrected by Purchaser in the sole discretion of Seller, Seller may, at its sole discretion, either reject the Trade Vessel or adjust the Trade Allowance based upon survey deficiencies not corrected by Purchaser. If Seller elects to reject the Trade Vessel, the Agreement shall terminate, Seller shall return all deposit monies paid by Purchaser, and both parties shall be released from further liability hereunder. Purchaser represents and warrants that the Trade Vessel is solely owned by Purchaser and is free and clear of any and all encumbrances, excise taxes, other applicable taxes, customs' duties, tariffs, security interests, maritime and common law liens, regardless of jurisdiction, except as otherwise specifically noted herein. Purchaser shall, as a condition precedent to Closing, (a) deliver to Seller satisfactory evidence of title and proof of payment of all encumbrances, excise taxes, other applicable taxes, customs' duties, tariffs, security interests, maritime and common law liens; (b) disclose to Seller all known defects, damages, and prior accidents in the Trade Vessel; and (c) agree to immediately execute and deliver to Seller such documents of title as are necessary to enable Seller to sell the Trade Vessel to a third party purchaser. Unless otherwise agreed in writing, Purchaser shall deliver the Trade Vessel to the Delivery Location on the date of Closing, together with all gear, machinery, equipment, tenders, toys, fuel and other consumables as existed on the date of this Agreement. Purchaser shall not modify the Trade Vessel without Seller's written consent. Upon execution of the Agreement, Purchaser will not make any use of the Trade Vessel pending Closing except to move the Trade Vessel to the Delivery Location and the location of the survey and trial run as designated by Seller. Purchaser will bear the risk of loss or damage to the Trade Vessel prior to closing. If the Trade Vessel is damaged subsequent to this Agreement, Seller may terminate the Agreement, return all monies paid by Purchaser, and both parties shall be released from further liability.

15. **Miscellaneous.** (a) **Waiver**. No claim or right arising out of this Agreement can be waived or discharged by one party, in whole or in part, unless in writing nor shall any waiver be applicable except in the specific instance for which it is given. (b) **Entire Agreement.** This Agreement sets forth the entire agreement between the parties and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to tis subject matter; supersedes all prior and contemporaneous discussions, understandings, or agreements, whether written or oral, between the parties with respect to its subject matter; and may not be amended, supplemented, or otherwise modified, unless duly executed by or on behalf of each party (in the case of Seller, by an officer of Seller). (c) **Binding Effect.** This Agreement is binding upon, inures to the benefit of, and is enforceable by the parties to this Agreement and their respective successors and authorized assigns. (d) **Invalid Provisions**. If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future law, and if the rights or obligations of any party hereto under this Agreement will not be materially and adversely affected thereby, (i) such provision will be fully severable; (ii) this Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof; (iii) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable provision, or by its severance herefrom; and (iv) in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as part of this Agreement a legal, valid and enforceable provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible. (e) **Counsel**. The Purchaser has had an opportunity to consult with counsel of his choice prior to signing this Agreement. Any paragraph headings herein are for convenience of reference only and will not be deemed to be part of the substance of this Agreement. (f) **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be considered an original. (g) **Notices**. All notices shall (i) be in writing, (ii) shall be delivered to Purchaser at the address in the info box and to Seller at the address below, (iii) shall be sent by overnight courier, facsimile, or email with proof of delivery retained, and shall be effective upon delivery. (f) HAVING HAD AN OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR CHOICE, THE PARTIES IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM EITHER ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE YACHT. This paragraph survives Closing and termination/expiration of this Agreement.

I/we have read the above and agree that these terms and conditions are an integral part of this contract.

Purchaser Signature                                        Co-Purchaser Signature

Billy Bush                09:47 AM GMT-07:00 May 20, 2021

William H. Bush           Date                             _______________ Date

Initials: Purchaser: BB      Co-Purchaser:___________

# SCHEDULE B

## DEALER & MANUFACTURER OPTIONS

| Dealer Options | | Manufacturer Options | |
|---|---|---|---|
| Full canvas enclosure-estimate-subject to change-$2,000 | | 26 Coronado 26 DC with Yamaha F250XA-$177,052.86<br>Painted hull-Flag Blue with White boot stripe-$6,788.57<br>Docking lights-$654.29<br>Battery charger-$640.00<br>Garmin with VHF-$8,461.00<br>Stereo-$2,150.00<br>Subwoofer and amplifier-$1,450.00<br>Varnished wood transom-$9,571.00<br>Ski-pole-$1,689.00<br>Transom shower-$1,223.00<br>Refrigerator-$2,204.00<br>Power steering-Masterdrive-$4,072.86<br>Cocktail table-corian with Teak fiddles-$1,731.43<br>Windlass-SS anchor,150' rode,15' chain-$5,974.29<br>Stainless steel Bimini top-$3,438.00<br>Grey water tank-$401.43<br>Sileather upgrade-Mustang Egg Shell-$1,428.57<br>Multi season bottom paint package-$4,640.00<br>Water ready-(2) batteries, oil, prop installed-$821.43<br>Full canvas enclosure-estimate(subject to change)-$2,000.00 | |
| Dealer Options Total: | $2,000.00 USD | Manufacturer Options Total: | $57,338.86 USD |

Initials: Purchaser: BB Co-Purchaser:____________